# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KENDALL J. STEWART** | **CIVIL ACTION** |
| **VERSUS** | **NO. 08-4241** |
| **TERRY TERRELL, WARDEN** | **SECTION "A"(3)** |

# REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, the Court has determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, it is recommended that the instant petition for habeas corpus relief be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies.

---

[1] Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.      STATE COURT PROCEDURAL BACKGROUND

The petitioner, Kendall J. Stewart, is incarcerated in the Allen Correctional Center in Kinder, Louisiana.[2] On October 22, 2003, Stewart and a co-defendant, Emanuel J. Veal, were charged by bill of information in Orleans Parish with two counts of armed robbery. Veal was also charged in a third count for first degree robbery.[3] The Louisiana Fourth Circuit Court of Appeal summarized the relevant facts of the case as follows:

> Aimee Bonneval and Amanda Hofstetter were robbed inside Ms. Bonneval's apartment just before midnight on August 9, 2003. Ms. Bonneval testified that she and Ms. Hofstetter had arrived at the apartment a short time before the robbery, and they settled onto a sofa in the living room to watch television while drinking beer. Ms. Bonneval stated that they heard a loud noise, and then the front door flew open and two men rushed into her apartment. Ms. Bonneval identified Kendall Stewart as the first man to come into the apartment and Emanuel Veal as the second man. She testified that the men yelled at the two women to turn around so that they would not be facing them, but Ms. Bonneval was able to see the men's faces because when she turned around she faced a mirror, from which she could observe the robbers. She stated that both men were carrying small handguns. When the men noticed that she was watching them in the mirror, they ordered her and Ms. Hofstetter to put their heads down with their faces toward the sofa. Ms. Bonneval testified that when the men demanded the women's purses, she gave them hers, while Ms. Hofstetter pointed to her purse, which was lying nearby. Ms. Bonneval stated that the robbers had guns to both women's heads. She testified that Mr. Stewart then went through the apartment looking for things to take, while Mr. Veal stayed with the women. She testified that Mr. Stewart ordered her to tell him the location of her money and jewelry, and she replied that she did not have any. He then asked for her telephone, and she told him she only had a cell phone. She stated that Mr. Stewart and Mr. Veal turned out the lights in the apartment and left, threatening to shoot the women if they walked out of the door to the apartment.
> Ms. Bonneval testified that the lights had been on during the entire robbery, and she was able to get a good look at both men's faces. She stated that she gave to the police descriptions of the two men: the first man who came through the door was approximately 5'10" tall, weighed about 160 pounds, and was wearing jeans and a blue and white jersey; the second man was approximately 5'6" tall, weighed about 140 pounds, and was wearing jeans and a white t-shirt. She stated that some days

---

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 1 of 4, Bill of Information (2 pages), 10/22/03.

2

later a police officer showed her two photographic lineups. She testified she chose no one from the first lineup, but she chose Mr. Veal's photo from the second one. Later she was shown a third lineup, from which she chose Mr. Stewart's photo.

Ms. Bonneval admitted that she did not know for sure that Mr. Stewart was the man who searched the apartment because she had her head down on the sofa, but she assumed he was the one who did so. She testified that although the only time she saw the second robber's face was his reflection in the mirror, she was able to get a good look at both him and the first man who came through the door. She maintained that she was certain the two robbers were Mr. Stewart and Mr. Veal.

Ms. Hofstetter testified that she was sitting on the sofa when the two robbers burst into the apartment. She said that she got a good look only at the shorter of the two while he was still standing out on the lighted porch after the first man entered. She testified that she could not make a positive identification from any of the photo lineups, but in one lineup she narrowed her choices down to two men after looking at the lineup for a long period of time, and she made a tentative identification of those two men, one of which was Mr. Veal.

Detective Steve Mortell testified that he conducted a follow-up investigation of the robbery, during which he came up with three suspects: Mr. Stewart, Mr. Veal, and Mr. Junius Jackson. He testified he showed Ms. Bonneval three photographic lineups. From the first, which contained photos of both Mr. Stewart and Mr. Jackson, she chose no one. When he showed her a lineup with Mr. Veal's photo, she chose Mr. Veal's photo. He later showed Ms. Bonneval another lineup from which she chose Mr. Stewart's photo. Detective Mortell testified that he showed Ms. Hofstetter only the lineup containing Mr. Veal's photograph because she had indicated that she only noticed the second robber's face. He testified that Ms. Hofstetter was only able to make a tentative identification from this lineup in that she was only able to narrow her choice to two men, one of which was Mr. Veal.

State v. Stewart, 909 So.2d 636, 637-38 (La. App. 4th Cir. 2005); State Record Volume 2 of 4, Louisiana Fourth Circuit Opinion, 2004-KA-2219, pp. 1-4, September 25, 2007.

Stewart and Veal were tried before a jury on counts one and two on September 28 and 29, 2004, and were each found guilty of two counts of the lesser included offense of first degree robbery.[4] The state trial court sentenced Stewart and Veal to 15 years in prison on each count

---

[4] St. Rec. Vol. 1 of 4, Trial Minutes, 9/28/04; Trial Minutes, 9/29/04; Jury Verdict (Stewart, Count 1), 9/29/04; Jury Verdict (Stewart, Count 2), 9/29/04; Jury Verdict (Veal, Count 1), 9/29/04; Jury Verdict (Veal, Count 2), 9/29/04. The record does not indicate the resolution of the third count against Veal.

without benefit of parole, probation or suspension of sentence.[5] The State filed a multiple bill against Stewart and, on May 3, 2005, he was found not guilty.[6]

On appeal, Stewart alleged that the State failed to prove that he was correctly identified as the perpetrator by a reliable identification.[7] On June 29, 2005, the Louisiana Fourth Circuit affirmed Stewart's conviction and held that the State presented sufficient identification evidence to support the conviction under the standards set forth in Jackson v. Virginia, 443 U.S. 307 (1979) and Manson v. Braithwaite, 432 U.S. 98 (1977).[8]

Stewart raised the same issues in his subsequent writ application to the Louisiana Supreme Court, which was denied without reasons on June 2, 2006.[9] His conviction became final 90 days later, on August 31, 2006, when he did not file a writ application with the United States Supreme Court. Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

---

[5]St. Rec. Vol. 1 of 4, Sentencing Minutes (2 pages), 10/8/04; Sentence of the Court (Stewart), 10/8/04; Sentence of the Court (Veal), 10/8/04.

[6]Rec. Doc. No. 1-4, p. 29 (Trial Court Judgment, 6/13/07). The State's assertion in the opposition response (Rec. Doc. No. 8, p. 3) that Stewart was sentenced as a multiple offender on May 25, 2006, is not supported by the record and the State references no support therefor.

[7]St. Rec. Vol. 2 of 4, Appeal Brief, 2004-KA-2219, 3/31/05.

[8]State v. Stewart, 909 So.2d at 641; St. Rec. Vol. 2 of 4, 4th Cir. Opinion, 2004-KA-2219, p. 9, 9/25/07. The Court also considered two other grounds raised by Veal in affirming his conviction.

[9]State v. Stewart, 929 So.2d 1250 (La. 2006); St. Rec. Vol. 4 of 4, La. S. Ct. Order, 2006-KO-0029, 6/2/06; La. S. Ct. Writ Application, 06-KO-0029, 1/5/06 (postal metered 7/26/05, signed 7/24/05).

On June 7, 2007, Stewart signed and submitted an application for post-conviction relief to the state trial court.[10] The state trial court denied the application on June 13, 2007, because Stewart failed to identify or brief any grounds for relief.[11]

On July 12, 2007, Stewart filed a writ application with the Louisiana Fourth Circuit raising four grounds for relief:[12] (1) he was never read his Miranda rights; (2) the conviction was based upon evidence which was unlawfully and illegally obtained and which was not provided to defense counsel during discovery; (3) counsel was ineffective for failure to assure that all of the pretrial motions, including the motion for discovery, were heard, which would have established the lack of probable cause; and (4) the trial court erred in finding that the identification process was not suggestive. After reviewing the claims, the Louisiana Fourth Circuit denied relief on July 25, 2007.[13] The Louisiana Supreme Court, on May 30, 2008, also denied without reasons Stewart's subsequent writ application which raised the same four issues.[14]

## II. FEDERAL HABEAS PETITION

On August 21, 2008, the clerk of court filed Stewart's petition for federal habeas corpus relief in which he raised five grounds for relief:[15] (1) he was never read his Miranda rights; (2) the conviction was based upon evidence which was unlawfully and illegally obtained and which was

---

[10]Rec. Doc. No. 1-4, p. 29 (Trial Court Judgment, 6/13/07), p. 30 (copy of Uniform Application for Post-Conviction Relief).

[11]Rec. Doc. No. 1-4, p. 29 (Trial Court Judgment, 6/12/07).

[12]St. Rec. Vol. 3 of 4, 4th Cir. Writ Application, 2007-K-0844, pp. 3-4, 7/12/07.

[13]St. Rec. Vol. 3 of 4, 4th Cir. Order, 2007-K-0844, 7/25/07.

[14]State ex rel. Stewart v. State, 983 So.2d 894 (La. 2008); St. Rec. Vol. 4 of 4, La. S. Ct. Order, 2007-KH-1791, 5/30/08; La. S. Ct. Writ Application, 07-KH-1791, 9/6/07 (postal metered 8/13/07, signed 8/15/07).

[15]Rec. Doc. No. 1, Memorandum in Support, p. 12.

not provided to defense counsel during discovery; (3) counsel was ineffective for failure to assure that all of the pretrial motions, including the motion for discovery, were heard, which would have established the lack of probable cause; (4) the trial court erred in finding that the identification process was not suggestive; and (5) counsel was ineffective, as evidenced by the allegations in support of claims three and four, for failure to conduct a "diligent and insidious" investigation which would have disclosed the alleged improprieties and hearsay testimony presented before the jury.

The State filed a response in opposition to the petition addressing only the first four claims and arguing that the claims are without merit.[16]

III.  GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[17] and applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)). The AEDPA therefore applies to Stewart's petition, which, for reasons discussed below, is deemed filed in this federal court on August 15, 2008.[18]

---

[16]Rec. Doc. No. 8.

[17]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[18]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Stewart's petition was filed by the clerk of court on August 21, 2008, when pauper status was granted. Stewart dated his signature on the petition on August 15, 2008, which is the earliest date on which he could have delivered the pleadings to prison officials for mailing.

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)). The State indicates in its opposition response that Stewart's petition is timely filed.[19] The State also indicates that the first four claims "appear exhausted."[20] The State, however, fails to recognize the fact that Stewart has raised a fifth claim in his federal petition addressing new grounds in support of an ineffective assistance of counsel claim.

This omission by the State makes it appropriate for the court to raise it sua sponte. Granberry v. Greer, 481 U.S. 129, 134 (1987); McGee v. Estelle, 722 F.2d 1206, 1214 (5th Cir. 1984) (a court may notice sua sponte the lack of exhaustion); see also, Shute v. State, 117 F.3d 233, 237 (5th Cir.1997). Accordingly, **petitioner is hereby specifically instructed that this report and recommendation is notice to him that this court is sua sponte raising the issue of procedural default and that petitioner must submit any evidence or argument concerning the default as part of any objections he may file to this report**. Magouirk v. Phillips, 144 F.3d 348, 358 (5th Cir. 1998).

IV.     EXHAUSTION REQUIREMENT

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." Whitehead v. Johnson, 157 F.3d 384, 387 (5th Cir. 1998) (citing Rose v. Lundy, 455 U.S. 509, 519-20 (1982)); accord Preiser v.

---

[19]Rec. Doc. No. 8.

[20]Id., p. 1.

Rodriguez, 411 U.S. 475, 500 (1973); Nobles, 127 F.3d at 419. "A federal habeas petition should be dismissed if state remedies have not been exhausted as to <u>all</u> of the federal court claims." (emphasis added) Id., 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); Rose, 455 U.S. at 519-20).

"The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the <u>highest</u> state court." Id. (citing Picard v. Connor, 404 U.S. 270, 275-78 (1971)) (emphasis added). "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); accord Duncan v. Walker, 533 U.S. 167, 177-79 (2001).

"A federal court claim must be the "substantial equivalent" of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." Whitehead, 157 F.3d at 387 (citing Picard, 404 U.S. at 275-78). "This requirement is not satisfied if the petitioner presents <u>new legal theories</u> or <u>new factual claims</u> in his federal application." (emphasis added) Id. (citing Nobles, 127 F.3d at 420). It is not enough for a petitioner to have raised the claims in the lower state courts if the claims were not specifically presented to the Louisiana Supreme Court. Baldwin v. Reese, 541 U.S. 27, 32 (2004) (a prisoner does not fairly present a claim to a state court if that court must read beyond a petition or brief, such as a lower court opinion, to find the claim). Thus, to have exhausted his claims in state court, Stewart must have fairly presented the same claims and legal theories he urges in this federal court to the state courts through to the Louisiana Supreme Court.

The record shows, and the State concedes, that Stewart has allowed the state courts one full round of review of on the first four claims raised in his federal petition. Stewart also now raises a

8

fifth claim that counsel gave ineffective assistance for failure to conduct a diligent investigation and for allowing hearsay and other inappropriate evidence to be presented before the jury. This claim, and the arguments in support, have not been previously raised in the state courts, including the state's highest court. As outlined above in detail, this claim was not among those raised or argued in either of his applications to the Louisiana Supreme Court.[21]

Stewart, therefore, has failed to exhaust available state court remedies as to his new ineffective assistance of counsel claim. See Whitehead, 157 F.3d at 387 (citing Nobles, 127 F.3d at 420). The record discloses no good cause for Stewart's failure to exhaust, and the Court can find none in the record. Rhines v. Weber, 544 U.S. 269, 278 (2005). This mixed petition, presenting both exhausted and unexhausted claims, is subject to dismissal without prejudice to require Stewart to exhaust available state court remedies. Pliler v. Ford, 542 U.S. 225, 233 (2004) (quoting Rose, 455 U.S. at 510); Whitehead, 157 F.3d at 387.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that the petition of Kendall J. Stewart for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being

---

[21] In his first post-appeal writ application to the Louisiana Supreme Court, Stewart urged that the State failed to prove that he was correctly identified as the perpetrator by a reliable identification. St. Rec. Vol. 4 of 4, La. S. Ct. Writ Application, 06-KO-0029, 1/5/06. In his application to the Louisiana Supreme Court on post-conviction review, he raised the four claims now listed as the first four claims raised in this federal petition: (1) he was never read his Miranda rights; (2) the conviction was obtained by use of evidence obtained after an unlawful and illegally and not provided to defense counsel as discovery; (3) counsel was ineffective for failure to assure that all of the pretrial motions, namely the motion for discovery, were heard which would have established the lack of probable cause; and (4) the trial court erred in finding that the identification process was not suggestive. St. Rec. Vol. 4 of 4, La. S. Ct. Writ Application, 07-KH-1791, 9/6/07.

9

served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 4th day of March, 2009.

                                                DANIEL E. KNOWLES, III
                                    UNITED STATES MAGISTRATE JUDGE